1
2
3                              UNITED STATES DISTRICT COURT
4                                    DISTRICT OF NEVADA
5                                           * * *
6    FREEDOM MORTGAGE                          Case No. 2:11-cv-01403-MMD-GWF
     CORPORATION, a New Jersey
7    corporation,
                                                              ORDER
8                              Plaintiff,
                                               (Plf.'s Motion for Summary Judgment –
9    v.                                        dkt. no. 59; Def.'s Motion for Summary
                                               Judgment – dkt. no.  64; Def.'s Motion for
10   TROVARE HOMEOWNERS                        Default Judgment – dkt. no. 69)
     ASSOCIATION, a Nevada corporation;
11   TRIPLE BRAIDED CORD, LLC, as trustee
     of the HR TRUST; GERARDO GOMEZ, an
12   individual, and DOES 1 through 10
     inclusive,
13
                               Defendants.
14
15
16   **I.    SUMMARY**
17          Before the Court are Plaintiff Freedom Mortgage Corporation's Motion for
18   Summary Judgment (dkt. no. 59), Defendant Triple Braided Cord, LLC's Motion for
19   Summary Judgment (dkt. no. 64), and Defendant Triple Braided Cord, LLC's Motion for
20   Default Judgment (dkt. no. 69).  For the reasons discussed below, all motions are
21   denied.
22   **II.   BACKGROUND**
23          This case arises from a priority dispute between two lien holders on a parcel of
24   real property.  In cross-motions for summary judgment, the parties dispute whether
25   Plaintiff's mortgage securing a refinancing loan was a junior security interest
26   extinguished through a foreclosure sale or, whether under the equitable doctrine of
27   replacement, Plaintiff's mortgage was subrogated to the senior priority position of the
28   mortgage it replaced in the refinancing transaction and remains intact in the property.

Defendant Triple Braided Cord, LLC, as trustee of the HR Trust ("HR Trust"), the purchaser in the foreclosure sale, argues that the equitable doctrine of replacement may not be used to supplant the protections of Nevada's recording statutes afforded to bona fide purchasers.  Contrarily, Plaintiff Freedom Mortgage Corporation ("Plaintiff") argues that HR Trust had constructive notice of its interest and is not protected by the recording statutes.  Because questions of material fact remain, including whether there is a bona fide purchaser and whether HR Trust had constructive notice, the motions for summary judgment are denied.

The following facts are undisputed.  On or about September 25, 2008, Plaintiff and Defendant Gerardo Gomez ("Gomez") entered into a loan agreement whereby Plaintiff agreed to lend Gomez approximately $197,395.00 to purchase a home (the "Property").  The loan was secured by a Deed of Trust on the Property, which was recorded on September 30, 2008 ("First DOT").  (Dkt. no. 64-1.)  Later, on April 15, 2009, Gomez and Plaintiff entered into a refinancing loan agreement, whereby Plaintiff loaned $200,355.00 to Gomez at a lower interest rate with lower monthly payments. This new loan paid off the outstanding debt under the first loan and was also secured by a Deed of Trust on the Property ("Second DOT").  However, the Second DOT was not recorded until May 5, 2009.  (Dkt. no. 64-3.)  In between the execution of the new loan agreement and the recording of the Second DOT, Defendant Trovare Homeowners Association ("Trovare") recorded a Notice of Delinquent Assessment Lien (the "Intervening Lien") on April 27, 2009 for delinquent dues totaling $988.00.  (Dkt. no. 64-2.)  A few weeks later on May 19, 2009, Plaintiff released the First DOT pursuant to a Substitution of Trustee and Deed Reconveyance.  (Dkt. no. 64-4.)

Pursuant to its lien, Trovare filed a Notice of Default and Election to Sell under Homeowners Association Lien on June 17, 2009.  (Dkt. no. 32-5.)  More than a year later, Trovare recorded a Notice of Foreclosure Sale against the property to recover the outstanding balance of $4,113.00 in unpaid dues and fees.  (Dkt. no. 32-6.)  After several continuances, Trovare sold the property at a trustee's sale for $6,348.67 to HR

2

1    Trust on March 4, 2011; HR Trust recorded the Foreclosure Deed on March 26, 2011.

2    (Dkt. no. 64-8.)  The Parties have stipulated that Trovare conducted the foreclosure sale

3    in compliance with the notice requirements and other necessary provisions of NRS

4    116.3116 through NRS 116.3117.  (Dkt. no. 57.)

5         On August 31, 2011, more than two years after Trovare instigated foreclosure

6    proceedings, Plaintiff filed this lawsuit for declaratory relief and quiet title seeking to

7    establish that its security interest was not extinguished in the trustee's sale and still

8    exists in the Property.  HR Trust counterclaimed against Plaintiff and Doe Defendants

9    and cross-claimed against Gomez for declaratory relief and quiet title seeking to

10   establish that HR Trust purchased the property free of encumbrances from any party to

11   this suit.  Plaintiff and HR Trust both moved for summary judgment on their respective

12   claims (dkt. no. 59, 64), but stipulated to dismiss all claims against Trovare (dkt. no. 57).

13   Additionally, HR Trust moved for default judgment against Gomez and all fictitious

14   parties (dkt. no. 69.), after the Clerk's Entry of Default against Gomez (dkt. no. 30).

15   **III.   DISCUSSION**

16        **A.   Legal Standard**

17        The purpose of summary judgment is to avoid unnecessary trials when there is

18   no dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,

19   18 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when "the

20   pleadings, the discovery and disclosure materials on file, and any affidavits show there

21   is no genuine issue as to any material fact and that the movant is entitled to judgment

22   as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

23   330 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis on which a

24   reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it

25   could affect the outcome of the suit under the governing law.  *Anderson v. Liberty

26   Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Where reasonable minds could differ on the

27   material facts at issue, however, summary judgment is not appropriate.  *Warren v. City

28   of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  "The amount of evidence necessary to

1   raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the

2   parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897,

3   902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89

4   (1968)).   In evaluating a summary judgment motion, a court views all facts and draws all

5   inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v.*

6   *Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).   Where parties submit

7   cross-motions for summary judgment, the court must consider each party's evidence,

8   regardless under which motion the evidence is offered.  *Fair Hous. Council v. Riverside*

9   *Two*, 249 F.3d 1132, 1136 (9th Cir. 2001); *see also* William W. Schwarzer, et al., *The*

10  *Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb.

11  1992); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice

12  and Procedure § 2720, at 335-36 (3d ed.1998) ("The court must rule on each party's

13  motion on an individual and separate basis, determining, for each side, whether a

14  judgment may be entered in accordance with the Rule 56 standard.").

15           **B.    Analysis**

16           Plaintiff and HR Trust seek the Court's determination on the seniority of the

17  Second DOT in relation to the Intervening Loan. This determination necessarily

18  establishes if the Property is still subject to Plaintiff's security interest or if that security

19  interest was extinguished in the foreclosure sale.  Plaintiff asserts that, even though it

20  was recorded later in time, the Second DOT should have assumed the priority position

21  of the First DOT under equitable principles.   HR Trust counters that the equitable

22  doctrine upon which Plaintiff relies is not recognized under Nevada law, and even if it

23  was, equitable doctrines cannot frustrate the purposes underlying the recording

24  statutes.   Ultimately, the Court concludes the equitable doctrine upon which Plaintiff

25  relies is a part of Nevada law, but it is unclear, given the insufficiency of facts in the

26  record, whether the doctrine applies to the circumstances of this case.

27           Nevada is a race-notice recording state, wherein any interest in real property,

28  properly recorded, has priority over subsequently filed interests.  *See* NRS 111.320,

4

111.325; *Buhecker v. R.B. Petersen & Sons Consr. Co.*, 929 P.2d 937, 940 (Nev. 1996).  "Ordinarily, when a senior deed of trust is satisfied, the junior lienholders remain in their respective order of priority and are consequently elevated up the priority line." *American Sterling Bank v. Johnny Management LV, Inc.*, 245 P.3d 535, 539 (Nev. 2010).  However, equitable doctrines allow for certain junior interests to "leap-frog" in front of those senior to them.  *See id.* at 539.  The equitable doctrine of replacement allows a newly recorded mortgage to assume the priority position of a previous mortgage from the same lender when the newly recorded mortgage extinguishes and replaces the previous mortgage as part of the same transaction.  Restatement (Third) of Prop.: Mortgages § 7.3(a) (1997) [hereinafter Restatement].  The underlying policy of the doctrine is to facilitate borrowers' ability to obtain more favorable loan terms through refinancing and modification by providing lenders with flexibility to make changes to loans without sacrificing the priority of their security interest in the property.  *See* Restatement § 7.3 cmt. a. (1997).

Trovare's interest was recorded before the Second DOT and consequently, when the First DOT was released, Trovare's interest became the senior lien.  Under general priority rules alone, when Trovare foreclosed on their senior lien and sold the property at a trustee's sale, Plaintiff's junior interest was extinguished.  Thus, unless replacement applies to the circumstances of this case, HR Trust purchased the property from Trovare free from Plaintiff's encumbrance.  Plaintiff and HR Trust dispute both the availability of replacement under Nevada law and the application of replacement to the particular facts of this case.  Although the Court finds that the doctrine is available under Nevada law, it denies summary judgment for both parties because the factual record is insufficient to determine whether or not HR Trust was a bona fide purchaser protected by the recording statutes which would bar the application of the replacement doctrine.

### 1. Availability

The Court finds that the replacement doctrine as stated in the Restatement § 7.3 is part of Nevada law.  Although the Nevada Supreme Court has not had the opportunity

5

to directly address the doctrine of replacement, it has specifically adopted the related doctrine of Equitable Subrogation as stated in the Restatement § 7.6.   Equitable Subrogation permits a person who pays off an entire encumbrance of another "to assume the same priority position as the holder of the previous encumbrance." *Houston v. Bank of America Federal Savings Bank*, 78 P.3d 71, 74 (Nev. 2003) (quoting *Mort v. U.S.*, 86 F.3d 890, 893 (9th Cir. 1996).   Thus, Equitable Subrogation operates in the same manner as replacement, except Equitable Subrogation deals with the circumstance where one lender refinances the loan of another lender as opposed to the circumstance of replacement where a single lender refinances its own prior loan.  *See* Restatement § 7.6 cmt. e. (1997).

The Court sees no reason why Nevada law would recognize the ability of a lender to retain priority when refinancing the loan of another, but not when refinancing its own, prior loan.   The same rationale and policies underlie both doctrines. *See Houston*, 78 P.3d at 74-75; Restatement § 7.6 cmt. e. (1997).   Further, the internal references within the comments of the Restatement suggest that replacement and Equitable Subrogation are simply two iterations of the same equitable principle. *See* Restatement § 7.6 cmt. e. (1997).   In fact, the Nevada Supreme Court has even referenced the Restatement § 7.3 as an authority in its reasoning on the proper application of § 7.6. *See American Sterling*, 245 P.3d at 540.   For these reasons, the Court finds that the doctrine of replacement is available under Nevada law.

### 2.   Applicability

Having determined that the doctrine of replacement is part of Nevada law, the Court turns to the question of the doctrine's application to the instant case.   Under the replacement doctrine:

> If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except
>> (1) to the extent that any change in the terms of the mortgage or the obligation it secures is materially

1
2
3

> prejudicial to the holder of a junior interest in the real estate, or
> (2) to the extent that one who is protected by the recording act acquires an interest in the real estate at a time that the senior mortgage is not of record.

4   Restatement § 7.3(a) (1997).   Here, Plaintiff released the First DOT, the senior

5   mortgage of record, and replaced it with the Second DOT as part of the same

6   transaction. Thus, the Second DOT retained the priority position of the First DOT and

7   was senior to the Intervening Lien unless one of the two exceptions applies.

8   　　　　　　　　　　　　*a.  Did changes to the mortgage prejudice Trovare's junior interest?*

9   　　　　　The first exception protects the expectations of junior lienholders at the time of

10  the refinancing by seeking to preserve the relative probability of repayment of loans

11  secured by junior liens.   *See American Sterling*, 245 P.3d at 539-40.   Where

12  replacement would act as a mechanism to retroactively modify the terms of a senior

13  loan such that junior lenders are less likely to be repaid, junior lienholders are

14  prejudiced and replacement is inapplicable.   *See id.* at 541-42.   However, Nevada

15  Courts have held that increases in the loan principal are not prejudicial because

16  subsequent loans can only be subrogated to the amount of the original loan. *See*

17  *American Sterling*, 245 P.3d at 540.   Additionally, extensions of the maturity date are

18  generally not prejudicial as they typically reduce the likelihood of foreclosure of a senior

19  lien and often result in reduced monthly payment. *Id.*   Only where a junior lienholder's

20  expectation of repayment is significantly impacted, such as an accelerated maturity date

21  on the loan, is replacement inapplicable. *See id.* at 541-42.

22  　　　　　Here, the modifications to Plaintiff's loan were not prejudicial to Trovare.

23  Although the principal did increase, the increased amount cannot be subrogated under

24  equitable principles.   Additionally, the term of the loan was extended, the new interest

25  rate was lower, and the monthly payments were smaller. These modifications would

26  increase the solvency of the debtor and subsequently increase the probability of

27  repayment for junior lien holders.   Consequently, the modifications did not prejudice

28  Trovare's interest and the first exception does not apply.

*b. Was Trovare or HR Trust protected by the recording statutes?*

The second exception protects the interests of two classes: (1) secured lenders recording their interests after the release of the first mortgage but before the second is recorded, and (2) bona fide purchasers acquiring interests from sellers who are senior lien holders of record, but whose interests are subject to subrogation under the doctrine of replacement.  *See* Restatement § 7.3(a)(2) (1997).  This second exception seeks to maintain the integrity of the recording statutes by negating any equitable priority status of a second loan where the holder of an intervening lien relied in good faith on the property records without notice of another's equitable right to subrogate.  Consequently, this exception incentivizes creditors with senior priority under replacement to both record their interests and resolve priority disputes quickly because delaying to do so only increases the chances that a party acting in good faith and without notice will eliminate their rights under the replacement doctrine.

Trovare is not protected by the recording statutes because it had notice of Plaintiff's senior priority.  Although Trovare recorded its interest before Plaintiff recorded the Second DOT, the First DOT was still of record at that time.  Consequently, Trovare's expectation was to be a junior lien holder.  Elevating their status would result in an inequitable windfall, and Trovare is not within the class protected by the second exception.

However, because Plaintiff delayed in resolving the priority dispute at the time of the foreclosure sale, HR Trust may have taken the property in good faith and without notice, thus falling within the recording statutes' protection.  Under Nevada law, a party against whom an unrecorded interest is asserted may void that unrecorded interest if (1) he or she was a purchaser for value, and (2) he or she purchased without notice of the unrecorded interest.  *Berge v. Fredericks*, 591 P.2d 246, 247 (Nev. 1979).  As to the first element, a purchaser for value is one who acquires an interest in land for present consideration, and excludes those receiving property as a gift from protection.  *Id.* Adequacy of the present consideration is not part of the analysis.  *See id.*  As to the

second element, in addition to actual and record notice, circumstances "such that a purchaser is in possession of facts which would lead a reasonable man in his position to make an investigation that would advise him of the existence of prior unrecorded rights" impose a duty of inquiry and constitute constructive notice. *Allison Steel Mfg. Co. v. Bentonite, Inc.*, 471 P.2d 666, 668 (Nev. 1970).

Here, genuine issues of material fact remain unresolved regarding whether HR Trust was a bona fide purchaser without notice. HR Trust meets the first element since it paid $6,348.67 to obtain the Property. While this may represent an extremely discounted price given the fair market value of the Property, the Court does not analyze the adequacy of the consideration. However, under these particular facts, the inadequacy in the purchase price together with the timing in the title records may evidence that HR Trust does not meet the second element. Such a low purchase price suggests that buyers were aware or should have been aware of other encumbrances or potential disputes concerning the sale. Further, the fact that an inspection of the title records would show the First DOT on record followed by the recording of the Intervening Lien, followed by the recording of the Second DOT, followed by the release of the First DOT – although technically establishing the priority of the Intervening lien – may be sufficient to at least create a duty of inquiry into Plaintiff's priority position. This indicates that HR Trust may have constructive notice of Plaintiff's interest and thus was not protected by the recording statutes. Consequently, HR Trust's Motion for Summary Judgment must be denied.

However, while the evidence of the low purchase price and the timing in the record suggest that HR Trust had constructive notice of Plaintiff's interest, that suggestion is hardly conclusive. The evidence pertinent to this inquiry simply has not been developed. To conclude that HR Trust had constructive notice requires the Court to rely on inferences and assumptions about why the purchase price was low, and who knew what when. Reliance on such inferences and assumptions is improper in a

///

summary judgment analysis. Therefore, Plaintiff's Motion for Summary Judgment as to HR Trust must similarly be denied.

### C.   Claims Against Defendant Gerardo Gomez

Both Plaintiff and HR Trust have asserted claims for quiet title and declaratory relief against Gomez and have moved, respectively, for summary judgment and default judgment on those claims. Gomez has not asserted any claim to an interest in the property and cannot do so as his interest was extinguished in the foreclosure. Nonetheless, out of what appears to be an abundance of caution, both parties have included Gomez in their actions due to his presence in the chain of title. Although this inclusion may be prudent in an action for quiet title, the resolution of this technicality seems premature given the major disputed issue in the case is yet unresolved. Consequently, the Court declines to grant either Plaintiff's Motion for Summary Judgment as to Gomez, or HR Trust's Motion for Default Judgment against Gomez until the relative priority of Plaintiff's and HR Trust's interests is established.

## III.   CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDRED that Defendant's Motion for Default Judgment is DENIED.

DATED THIS 28th day of November 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE