UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION, a New Jersey corporation,<br><br>  Plaintiff,<br><br>v.<br><br>TROVARE HOMEOWNERS ASSOCIATION, a Nevada corporation; TRIPLE BRAIDED CORD, LLC, as trustee of the HR TRUST; GERARDO GOMEZ, an individual, and DOES 1 through 10 inclusive,<br><br>  Defendants. | Case No. 2:11-cv-01403-MMD-GWF<br><br>BENCH ORDER |

**I.   SUMMARY**

This case involves a priority dispute between a lender lien holder and a subsequent purchaser of a homeowner's association lien ("HOA lien") arising after a refinancing transaction. As part of that refinancing transaction, the borrower and lender entered into a new deed of trust and the lender released its prior deed of trust. However, before the new deed of trust was recorded, an HOA lien was recorded against the property for accumulated past-due fees. Consequently, when the lender released the prior deed of trust, it appeared on the county's property records that the HOA lien was senior to the subsequent deed of trust. The HOA subsequently foreclosed on its lien and sold the property to a third-party.

The lender, Plaintiff Freedom Mortgage Corporation ("Freedom"), sued the third-party, Defendant Triple Braided Cord, LLC, as trustee of the HR Trust ("HR Trust"), in a quiet title action seeking a declaration that its deed of trust was not extinguished by the foreclosure sale, and remained in first priority position. HR Trust counterclaimed, seeking a declaration that it purchased the property free and clear of any encumbrance.

In its Order resolving cross motions for summary judgment, the Court determined that the Restatement's doctrine of replacement was part of Nevada law and that the subsequent deed of trust assumed the priority position of the prior deed of trust, which was senior to the HOA lien. However, the Court found that factual issues remain as to whether an exception to the doctrine of replacement would apply and denied summary judgment. The Court held a bench trial on February 23, 2014. Testimony at trial concerned HR Trust's level of expertise, and what information was known or available to it at the time of the purchase. Because facts within the property records would have provided constructive notice of Freedom's priority interest, the Court finds in favor of the lender.

## II. FINDINGS OF FACT

1. On or about September 30, 2008, Gerado Gomez ("Gomez") purchased the single-family residence located at 5521 Hidden Rainbow Street, North Las Vegas, Nevada (the "Property") for $200,000.00. Gomez paid nearly the entire purchase price using the proceeds from a promissory note (the "2008 Note") payable to Freedom in the original principal amount of $197,395.00. (Pl.'s Ex. 2.)

2. In connection with the 2008 Note, Gomez executed a deed of trust (the "2008 DOT") granting Freedom a first-position security interest in the Property. The 2008 DOT was recorded in the Official Records of Clark County, Nevada, on September 30, 2008 as Book/Instrument No. 20080930-0005912. (Pl.'s Ex. 3.)

3. On April 15, 2009, Gomez executed another promissory note (the "2009 Note") payable to Freedom in the principal amount of $200,355.00. (Pl.'s Ex. 4.) The

///

proceeds of the 2009 Note were used to pay the balance due and owing to Freedom under the 2008 Note.

4. The terms of the 2009 Note were similar to those under the 2008 Note; the interest rate was lowered from 6.5% to 5.0% per annum, the monthly payment was reduced from $1,248.68 to $1,075.55, the principal balance increased by $2,960.00, and the original thirty-year term was extended by seven years. (Pl.'s Exs. 2, 4.)

5. In connection with the 2009 Note, Gomez executed a deed of trust on April 15, 2009 (the "2009 DOT"). The 2009 DOT was later recorded on May 5, 2009 as Book/Instrument No. 20090505-0003295. (Pl.'s Ex. 5)

6. After the execution but before the recording of the 2009 DOT, Trovare Homeowners Association ("Trovare") recorded a Notice of Delinquent Assessment Lien (the "HOA Lien") on the Property on April 27, 2009 as Book/Instrument No. 20090427-0001252 for outstanding HOA fees totaling $988.00. (Pl.'s Ex. 6.)

7. On May 19, 2009, Freedom released the 2008 Deed of Trust through a Substitution of Trustee and Deed of Reconveyance recorded as Book/Instrument No. 20090519-0001829. (Pl.'s Ex. 7.)

8. On June 17, 2009, Trovare caused a Notice of Default and Election to Sell under Homeowners Association Lien to be recorded against the Property as Book/Instrument No. 20090617-0001579. (Pl.'s Ex. 8.)

9. On November 4, 2010, Trovare caused a Notice of Foreclosure Sale to be recorded against the Property as Book/Instrument No. 20101104-0003362, scheduling a foreclosure sale of the Property to satisfy the HOA Lien on December 3, 2010, and indicating a total amount due of $4,113.00. (Pl.'s Ex. 10.)

10. The December 3, 2010, sale was postponed until February 4, 2011 (Pl.'s Ex. 13), and then again until March 4, 2011 (Pl.'s Ex. 14). Trovare completed the foreclosure of its HOA Lien on March 4, 2011, selling the Property to HR Trust for a total

///

///

purchase price of $6,400.00[1] (the "Trustee's Sale"). (Pl.'s Ex. 15.) Around forty bidders were present at the auction. (Test. of Ryan Welch.)

11. On March 25, 2011, Trovare caused a Foreclosure Deed to be recorded in the Official Records as Book/Instrument No. 20110325-0000390 transferring title to the Property "without warranty express or implied" to HR Trust. (Pl.'s Ex. 16.)

12. Ryan Welch is the Managing Member of Triple Braided Cord, LLC, trustee of the HR Trust. (Test. of Ryan Welch.)[2]

13. Mr. Welch had purchased three to four properties in foreclosure auction sales before HR Trust's purchase of the Property. (*Id.*)

14. Mr. Welch first became aware the Property was for sale the morning the Property was to go to auction. Generally, properties go to auction any time after ten o'clock a.m. (*Id.*)

15. Before purchasing the Property at foreclosure auction, Mr. Welch examined the Clark County Recorder's Office website to investigate title to the Property. On the website, Mr. Welch observed the Date of the HOA Lien, dates of other recorded liens, and the recordation of the 2009 DOT. Mr. Welch did not recall seeing the 2008 DOT. Mr. Welch did not obtain copies of the actual recorded documents. (*Id.*)

16. Mr. Welch also sought the opinion of his attorney on the matter, and after conferring with his attorney concluded that the HOA Lien was the senior lien on the Property. Mr. Welch believed his attorney reviewed the same information that he did on the Clark County Recorder's Office website because he supplied his attorney the property information and his attorney responded within a short period of time (probably five minutes) to his inquiry. (*Id.*)

17. On at least one prior occasion, Mr. Welch had tried obtaining information about a status of a security interest from a bank, but was unable to obtain any

---

[1] $51.33 was later returned to HR Trust as overpayment at the Trustee's Sale. Thus, the final purchase price was $6,348.67.

[2] Mr. Welch was the only witness to offer testimony during the bench trial.

4

information without the debtor's social security number or a loan number. As a potential buyer at a foreclosure auction, Mr. Welch did not have access to this information. Mr. Welch did not approach Freedom to inquire about the priority status of the 2009 DOT. (Id.)

18. Mr. Welch also conducted research regarding the fair market value of the Property by finding the sale price of similar properties in the area. Based on the research, Mr. Welch concluded that the Property had a fair market value above $100,000.00. (Id.)

19. After the purchase, HR Trust spent roughly $37,000.00 in improvements to the Property and has spent a total of approximately $87,000.00 to date in "various costs."[3] HR Trust receives $1,495 per month in rental income from the property and has collected a total of roughly $38,000.00 to date in rental income. (Id.)

### III. CONCLUSIONS OF LAW

In its prior Order denying the parties' cross motions for summary judgment, the Court determined that the Restatement's doctrine of replacement is part of Nevada law. (Dkt. no. 86.) Under the doctrine of replacement, a newly recorded mortgage assumes the priority position of a previous mortgage from the same lender when the newly recorded mortgage extinguishes and replaces the previous mortgage as part of the same transaction. Restatement (Third) of Prop.: Mortgages § 7.3(a) (1997). Thus, under the doctrine, the 2009 DOT would assume the priority position of the 2008 DOT.

Nonetheless, the Restatement details two exceptions where the doctrine is inapplicable. The first situation is when the terms of the subsequent mortgage differ substantially from the prior mortgage such that allowing the subsequent mortgage to assume the position of the prior mortgage would prejudice any junior lien holders. Restatement § 7.3(a)(1). The second is where "one who is protected by the recording act acquires an

---

[3]Presumably, these costs include property taxes, HOA fees, and other carrying costs. However, it is unclear if Mr. Welch included in this figure HR Trust's legal fees associated with this dispute.

interest in the real estate at a time that the senior mortgage is not of record." Restatement § 7.3(a)(2). The Court determined that the first exception did not apply, but that the second exception could apply if HR Trust was a *bona fide* purchaser protected by the recording statutes. If so, the doctrine of replacement would be inapplicable and the 2009 DOT would have been extinguished in the Trustee's Sale as a lien junior to the foreclosed HOA Lien.

Having heard the testimony presented at the bench trial, the Court finds that HR Trust cannot establish itself as a *bona fide* purchaser because the facts within the official records for the Property put HR Trust on constructive notice of Freedom's interest. As a result, the exception is not applicable, the doctrine of replacement applies, and HR Trust purchased the property subject to Freedom's more senior security interest.[4]

### A. HR Trust's Ignorance of the Doctrine of Replacement at the Time of the Purchase Does Not Prevent the Doctrine's Application.

The Court will first address HR Trust's argument that it could not have had notice of Freedom's interest in the Property because, at the time of its title investigation and purchase, "the doctrine of replacement was not accepted as Nevada law." (Dkt. no. 131.) HR Trust asserts that "it would be fundamentally unfair to retroactively apply the doctrine of replacement to the time that HR Trust purchased the Property." (*Id.*) HR Trust further argues that to impute knowledge to a party "of a doctrine that had not been determined to be [the law] at the time" infuses so much risk onto participants in the foreclosure auction market that participants would refuse to purchase foreclosed homes at auction.

However, HR Trust's position is untenable. The doctrine of replacement is an equitable doctrine designed to protect the reasonable expectations regarding priority in refinancing transactions, not a recently enacted statute. Although no court in Nevada has

---

[4]The parties spent a considerable amount of time in their briefs and at trial blaming the other for alleged mistakes and arguing that the opposing party should not be allowed to subsequently rectify its mistakes through litigation. The Court notes that both parties' actions do not appear to be in accordance with best business practices. Nonetheless, what a party *could* have done to avoid the present circumstances is irrelevant to the Court's analysis. Thus, the Court disregards these arguments and focuses on the legal ramifications of what *was* actually done.

had to consider the doctrine, the Court's determination did not reverse a long-standing legal rule or invent a new one. Indeed, the articulation of the doctrine in the Restatement, and Nevada courts' application of the nearly identical doctrine of equitable subrogation were accessible and widely known at the time of HR Trust's purchase. *See, e.g.*, *Houston v. Bank of Am. Fed. Sav. Bank*, 78 P.3d 71, 74-75 (Nev. 2003). Thus, to say that the doctrine of replacement "was not accepted as Nevada law at the time of the purchase" is inaccurate. HR Trust may not avoid liability because it lacked the foresight to project the outcome of potential litigation.[5]

As to HR Trust's concerns about risk, the Court's decision will not alter the current risks already associated with foreclosure auction sales. Foreclosure auctions, similar to a myriad of other transactions across society, entail risk that future judicial determinations might affect the rights initially contemplated by a party. Due to this inherent, systemic risk, individuals and businesses commonly "retain counsel to obtain legal opinions" (dkt. no. 131) that predict what future disputes may arise in a particular transaction and how those disputes will be resolved. Where individuals deem the risks to outweigh the benefits, transactions are not consummated.[6]

### B. HR Trust is not a Bona Fide Purchaser

The Court next turns to HR Trust's status as a *bona fide* purchaser. To qualify as a *bona fide* purchaser, one cannot have notice, actual or constructive, of another party's unrecorded interest in property. *See Huntington v. Mila, Inc.*, 75 P.3d 354, 357 (Nev. 2003). The burden of proof in establishing that a subsequent purchaser was a *bona fide* purchaser within the meaning of the recording acts rests upon the party claiming such

///

---

[5]Indeed, if "we didn't know at the time the Court would hold this way" was a valid defense, liability would seldom be found.

[6]In fact, HR Trust appeared aware of risks when it purchased the Property. Mr. Welch testified that if Freedom made a mistake in the recording of the 2009 Deed, its title company would be responsible. Such analysis suggests that Mr. Welch evaluated the risk that title may be problematic, but decided to proceed given the low auction price and the chance that Freedom would seek relief from its own title company.

status. *Berge v. Fredericks*, 591 P.3d 246, 248 (Nev. 1979). Thus, HR Trust must show that it lacked actual or constructive notice of Freedom's interest.

"Constructive notice is that which is imparted to a person upon strictly legal inference of matters which he necessarily ought to know, or which, by the exercise of ordinary diligence, he might know." *Allison Steel Mfg. Co. v. Bentonite, Inc.*, 471 P.2d 666, 668 (Nev. 1970). A purchaser has constructive notice of another's interest when the available facts indicate "that [the purchaser] may not be getting all he expected." *Id.* Similarly, "when the circumstances are such that a purchaser is in possession of facts which would lead a reasonable man in his position to make an investigation that would advise him of the existence of prior unrecorded rights," that purchaser has "constructive notice of their existence whether he does or does not make the investigation." *Id.*

For HR Trust to be a *bona fide* purchaser, the facts known to it or which should have been known to it must be insufficient to constitute notice of Freedom's interest. HR Trust argues that because the information contained on the Clark County Recorder's Office website was not sufficient to put a reasonable buyer on notice of Freedom's interest, and because a reasonable buyer could not have discovered additional facts given the limited time with which HR Trust had to conduct its investigation, it did not have constructive notice. However, the subjective analysis HR Trust undertakes is not an appropriate application of the law. Rather, the proper inquiry is whether all facts objectively available to HR Trust at the time of the purchase were sufficient to provide a legal inference of Freedom's senior interest. The Court concludes that they were.

### 1. HR Trust is Deemed to Have Knowledge of the Entire Record

Under Nevada law, every document properly recorded in a county recorder's office "provides notice of the contents thereof, and all third parties shall be deemed to purchase and take with notice." NRS 247.190(1); *In re Crystal Cascades Civil, LLC*, 398 B.R. 23, 29 (Bankr. D. Nev. 2008). Regardless of whether or not a purchaser of real property performs an adequate title search, "he or she is charged with constructive notice of, and takes ownership of the property subject to, any interest such a title search

would reveal." *Adaven Mgmt., Inc. v. Mountain Falls Acquisition Corp.*, 191 P.3d 1189, 1195 (Nev. 2008).

At trial, Mr. Welch testified that the extent of the title search both he and his attorney conducted was to view the list of documents summarized on the Clark County Recorder's Office website. Neither Welch nor his attorney viewed the actual recorded documents. Because parties are charged with notice *of the contents of documents*, this cursory search was inadequate, and HR Trust assumed the risk of its superficial search.[7]

Additionally, the short period of time HR Trust had in which to conduct its investigation does not absolve it of this risk. Without presenting any supporting authority, HR Trust argues that because it discovered the sale less than twenty-four hours before it was to take place, a reasonable person in its position could not conduct a thorough search. However, under Nevada law, a purchaser of property is presumed to know the contents of recorded documents irrespective of any time limitation. If a purchaser lacks time to familiarize himself with those contents, he assumes the risk, as HR Trust did here, that something contained in the documents could affect his rights.

Moreover, HR Trust cannot assert lack of time as an excuse when any urgency was self-created by its late discovery of the sale. Plaintiff has established that the sale of the Property was first published on November 4, 2010, with a sale date set for December 3, 2010. The sale was subsequently postponed on December 3, 2010, to February 4, 2011, and then again postponed on February 4, 2011, to March 4, 2011. Thus, at the time of the purchase, the Notice of Foreclosure Sale had been recorded for four months and notice of the sale date had been available for a month.

---

[7] HR Trust asserts that its review of the website was a sufficient search because it is common practice within the real estate industry to consult the website. The Court's holding is not that the website should not be used, or that the website is not a useful tool to aid in conducting a title search. Rather, the Court's holding is that because the website does not provide the contents of the recorded document, the contents of which a purchaser is presumed to know, a purchaser relying on the website alone assumes the risk that the summary of documents on the website creates an incomplete or false impression of the chain of title.

### 2. Evidence in the Official Records Provides Constructive Notice of Freedom's Priority Interest

Consequently, a reasonable potential buyer conducting a title search of the recorded documents would have notice of the relative timing and connection of the recorded documents: the recording of the 2008 DOT before the HOA Lien, the subsequent recording of the 2009 DOT, and the release of the 2008 DOT a few days later. A potential buyer would also have notice that the 2008 DOT and 2009 DOT were both executed in favor of the same lender and for similar amounts.[8] These facts, at a minimum, would have given rise to a duty to investigate the matter further.

HR Trust, however, contends that further investigation would not have revealed additional information[9] because the recorded documents do not give rise to any notice that Freedom's interest had priority over the HOA Lien. But this argument misconstrues HR Trust's duty to investigate. Where a duty of inquiry arises, a purchaser is presumed to have notice of what the investigation would reveal. *Allison*, 471 P.2d at 668. The proper way of rebutting this presumption is a "showing that [the purchaser] made due investigation without discovering the prior right or title he was bound to investigate." *Berge v. Fredericks*, 591 P.2d 246, 249 (Nev. 1979) (*citing* 8 G.W. Thompson, Real Property § 4326 at 451). Thus, to rebut inquiry notice, argument of futility by itself, as HR Trust asserts, is insufficient; the law requires evidence of the investigation and a

---

[8]Freedom argues that an inspection of the 2009 DOT reveals that it was executed — although not recorded — before the recordation of the HOA Lien, thus providing actual knowledge of a superior interest. This argument, however, misconstrues the law. Assuming for the moment that the replacement doctrine was not available to Freedom, there is no question that the HOA Lien would be the senior lien despite the earlier execution of 2009 DOT, and the 2009 DOT would have been extinguished by the Trustee's Sale. *See* NRS 111.315. Thus, the fact that the 2009 DOT was executed before the HOA Lien was recorded would not put a buyer on notice of Freedom's superior interest because, under the assumed facts, Freedom's interest would not be superior. In that case, a buyer would simply take the senior interest held by the HOA Lien. Therefore, the date of the execution of the 2009 DOT is irrelevant; the pertinent question is whether the buyer had notice that the 2009 DOT assumed the position of the 2008 DOT by virtue of replacement.

[9]In support of this argument, HR Trust offered Mr. Welch's testimony to show that inquiring into the status of the 2008 DOT and the 2009 DOT of Freedom would have been futile because his experience teaches that lenders do not give out information regarding loans to third-parties.

determination by the fact finder that the investigation was sufficient. *Id.* Because HR Trust admittedly did not undertake an investigation of any kind into Freedom's interest, it cannot rebut the presumption of inquiry notice.

**IV.   CONCLUSION**

The Court finds that HR Trust had constructive notice of Freedom's interest in the Property and was not a *bona fide* purchaser entitled to protection under the recording statutes. Under the doctrine of replacement, the 2009 DOT assumed the priority position of the 2008 DOT and was senior to the HOA Lien at the time of the Trustee's Sale. Therefore, the Property is still subject to Freedom's security interest.

It is therefore ordered that Defendant HR Trust's Counterclaim (dkt. no. 16) is dismissed.

It is further ordered that pursuant to NRS § 14.015, the Notice of Pendency of Action filed and recorded by or on behalf of Plaintiff on the real property located at 5521 Hidden Rainbow Street, North Las Vegas, Nevada (APN 124-34-512-039) with the Clark County Recorder's Office as Instrument Number 20090505-0003295 is hereby cancelled and extinguished; this cancellation has the same effect as an expungement of the original notice;

It is further ordered that Plaintiff will record a copy of this Order with the Clark County Recorder's Office.

The Clerk of the Court is hereby ordered to enter judgment in favor of Plaintiff Freedom Mortgage Corporation and to close the case.

DATED THIS 21st day of February 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE